ACCEPTED
15-25-00012-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/31/2025 4:21 PM
CHRISTOPHER A. PRINE
CLERK

THE LAW OFFICE OF R. KEMP KASLING, P.C.

5806 Mesa Drive Suite 300

Austin, Texas 78731

PH: 512-472-6800

FAX: 512-472-6823

kkasling@kaslinglaw.com

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS

7/31/2025 4:21:53 PM

CHRISTOPHER A. PRINE
Clerk

July 31, 2025

Mr. Christopher A. Prine                                    **Via E-Filing**

Clerk, Fifteenth Court of Appeals

P. O. Box 12852

Austin, Texas 78711

Re: No. 15-25-00012-CV, *State of Texas et al. v. 8317 Cross Park, LLC.,* in the Fifteenth Court of Appeals (the "Cross Park Litigation")

Dear Mr. Prine:

On July 28, 2025, Broadmoor Austin Associates ("Broadmoor"), the Appellee in No. 15-25-00013-CV, *State of Texas et al. v. Broadmoor Austin Associates,* (the "Broadmoor Litigation") submitted a letter to this Court addressing factual inaccuracies and responding to new arguments raised by Appellants in their reply brief filed in No. 15-25-00013-CV. A true copy of Broadmoor's letter is attached hereto.

The Broadmoor Litigation and the Cross Park Litigation involve substantially similar facts and circumstances and the Appellants claimed sovereign immunity in both cases (and the two matters were consolidated in the Travis County District Court). Appellants have made the same mistakes and also make the same new arguments in their reply brief filed in this appeal (No. 15-25-00012). Therefore, Appellee 8317 Cross Park, LLC hereby adopts and incorporates by reference the arguments and authorities set forth in Broadmoor's letter.

Thank you for bringing this letter to the Court's attention.

Sincerely,


*/s/ R. Kemp Kasling*
R. Kemp Kasling

***Attorney for Appellee***
***8317 Cross Park, LLC.***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via e-service on this 31st day of July 2025, to the following counsel of record:

Jennifer Cook
Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Jennifer.cook@oag.texas.gov

*/s/ R. Kemp Kasling*
R. Kemp Kasling



Jason LaFond
Direct Dial: 512.495.6338
jlafond@scottdoug.com

July 28, 2025

**VIA E-FILING**

Mr. Christopher A. Prine, Clerk
Fifteenth Court of Appeals
William P. Clements Building
300 W. 15th Street, Suite 607
Austin, Texas 78701

Re:    *State v. Broadmoor Austin Associates*, No. 15-25-00013-CV

Dear Mr. Prine:

Appellee Broadmoor Austin Associates respectfully submits this letter to correct an inaccuracy in Appellants' reply brief and to address two arguments from Appellants' reply brief that didn't appear in Appellants' opening brief. Please forward this letter to the panel's attention at your convenience.

### *HHSC's exceptional item request doesn't support Appellants' arguments.*

As Broadmoor recounted in the background section of its brief, HHSC's judicially noticeable FY2024–25 biennial baseline appropriations request asked for less money under "Rent – Building" than HHSC projected it needed for the biennium. Broadmoor Br. 11. HHSC included the remainder in an exceptional item request. *Id.* 11–12.

It's the significance of that exceptional item request that the Appellants' reply inaccurately describes. In the district court, Appellants presented no evidence showing that anyone at HHSC (or anywhere else) ever even considered whether HHSC lacked funds to pay rent, let alone evidence that HHSC actually lacked funds or believed it lacked funds. *See* Broadmoor Br. 53-55. In their reply, Appellants grasp at HHSC's early estimates in its exceptional item request as some evidence that "there are multiple variables that impact the certification for funding and the analysis can be complex." Reply Br. 7-8. Appellants, however, still can't point to any evidence that HHSC lacked sufficient funds or ever considered whether it had sufficient funds—multiple variables or not.

Appellants rely on the exceptional item request to suggest HHSC received less funding than it needed for rent. *See* Reply Br. 6-14, 24. But HHSC made that request in early September 2022, nearly a year before Novak's purported termination of the Broadmoor Lease and Niles' incomplete certification. *See* Broadmoor Br. App'x Tab 6. Thus, HHSC advised in the request that, "[a]s additional information becomes available, the agency will be able to more accurately assess its needs." *Id.*

By mid-2023, it was clear that HHSC had enough money. For example, HHSC's exceptional item request "assumed [a] 9.9% year-over-year increase in the Consumer Price Index for the 2024-25 biennium," Reply Br. 10, but by the time the Legislature enacted the GAA, the CPI had fallen precipitously. *See id.* 11. Leaving no doubt HHSC knew it had enough funds, Niles certified $93.7 million in annual lease expenses for the upcoming biennium, tens of millions less than appropriated. *See* Reply Br. 30; Broadmoor Br. 55. There's no evidence that Niles' certified amount didn't include inflation. *Contra* Reply Br. 30-31. But even if it didn't, he'd still know there was plenty of rent money. Even at a grossly exaggerated annual inflation rate of 10%, $93.7 million would be $103 million in year one and $113 million in year two—totaling more than $20 million *less* than was appropriated for rent across the biennium.

In the end, what matters most is this: Arguments in briefs aren't evidence. No one has ever certified that funds were unavailable to pay rent due under the Broadmoor Lease, there's no evidence anyone thought funds were unavailable to pay rent due under the Broadmoor Lease, and all evidence in the record suggests both that those funds were available and that Niles and Novak knew they were available.

### *Chapter 114 is not limited to contracts with one state agency.*

As Broadmoor showed, the Broadmoor Lease easily fits within the plain text and fair meaning of Texas Civil Practice & Remedies Code Chapter 114's waiver of sovereign immunity. Broadmoor Br. 19-46. Appellants' reply mostly rehashes their own unpersuasive arguments from their opening brief without addressing Broadmoor's. But their reply also makes a new argument, that Chapter 114 turns on the number of state entities that are contractual counterparties. Appellants argue that Chapter 114 doesn't apply because "[t]he contract at issue falls within Chapter 2167 of the Government Code, which expressly *involves two state agencies* and the State of Texas as lessee; in contrast, Chapter 114 requires a contract for *a single state agency*." Reply Br. 16-18 (emphases added).

The Appellants' new argument is easily disposed of. To be sure, Chapter 114 speaks of "a state agency" and "the state agency." *E.g.*, Tex. Civ. Prac. & Rem. Code §§ 114.001(2), 114.003. But in Texas statutes, "[t]he singular includes the plural." Tex. Gov't Code § 311.012(b). Indeed, that rule is a fundamental canon of interpretation because it "is simply a matter of common sense and everyday linguistic experience." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 130 (2012). So "state agency" includes "state agencies." Chapter 114's fair meaning thus doesn't limit its waiver to single-agency contracts.

Even putting common sense aside, Appellants' argument falters because Chapter 114's plain text shows that the act of a single state agency triggers Chapter 114's waiver no matter how many other agencies also trigger the waiver. *See* Broadmoor Br. 24-25. "A state agency . . . *that enters* a contract subject to this chapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract." Tex. Civ. Prac. & Rem. Code § 114.003 (emphasis added). Chapter 114's trigger is *an act*—a state agency entering a specified contract, not the contract itself. And that trigger is a floor, not a ceiling: So long as at least one state agency performs that act, sovereign immunity is waived to adjudicate "a claim for breach of a written contract for engineering, architectural, or construction services . . . brought by a party to the written contract." *Id.* §§ 114.002-.003. That happened here. *See* Broadmoor Br. 25-35.

2

Nothing in Chapter 114 supports Appellants' proposed limit on the waiver's scope.

***The Texas Facilities Commission regulations applied to Novak's purported termination.***

Broadmoor demonstrated that Novak's purported termination of the Broadmoor Lease was outside his authority because, among other things, Novak's actions violated the Texas Facilities Commission's regulations that bind him. *See* Broadmoor Br. 56-58.

The Appellants don't dispute that Novak's purported termination conflicted with those regulations. They argue only that those regulations "are irrelevant because [they] were not in existence at the time the 2014 Lease was entered into so these regulations do not apply to this Lease." Appellants Br. 31. Appellants are mistaken.

The Appellants' new argument is misguided because it applies a rule of *contract interpretation* to an issue that doesn't turn on interpreting a contract. Appellants rely on a decision that recites "[t]he general rule . . . that the laws which are in existence at the time of the making of the ***contract*** are impliedly incorporated ***into the contract.***" *Progressive Cnty. Mut. Ins. Co. v. Caltzonsing,* 658 S.W.3d 384, 393 (Tex. App.—Corpus Christi-Edinburg 2022, no pet.) (citation omitted; emphases added) (cited at Appellants Br. 31). But Broadmoor doesn't rely on the regulations to support its breach of contract claim or for any other contract issue. It relies on them to support its *ultra vires* claim, which doesn't depend on the lease's terms. *See* Broadmoor Br. 56-58.

The regulations matter because they plainly govern Novak's authority to terminate the Broadmoor Lease: They "set[] out the procedure for the cancellation of a lease due to a lack of funding"—an administrative function, not a contractual one. 41 Tex. Reg. 7709, 7709 (Sept. 16, 2016) (adopting regulations). Novak engaged in acts those regulations govern—"process[ing] . . . *any request* to cancel a lease due to a lack of funding." *See id.* (emphasis added). And the date that controls is the date of the request to cancel a lease based on lack of funding, *see id.* at 7710 ("Effective date: October 3, 2016"), not the date of the lease whose cancellation is requested, *see* 1 Tex. Admin. Code §§ 115.20-22 (no mention of lease execution date). Novak had no authority to ignore the regulations. By ignoring them anyway, he acted *ultra vires.*

\* \* \*

The Court should affirm the district court's order denying the Government's plea to the jurisdiction. Alternatively, if the Court finds that Broadmoor's allegations are insufficient, it should remand for repleading.

Sincerely,

Jason R. LaFond
State Bar No. 24103136
jlafond@scottdoug.com
*Counsel for Appellee Broadmoor Austin*
*Associates, a Texas Joint Venture*

cc:    Counsel of Record via efile

3

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Mary Cook on behalf of Roy Kasling
Bar No. 11104800
macook@khdalaw.com
Envelope ID: 103838529
Filing Code Description: Letter
Filing Description: Correspondence to Mr. Price, 15th COA 07/31/2025
Status as of 7/31/2025 4:35 PM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 7/31/2025 4:21:53 PM | SENT |
| Jennifer Cook | | jennifer.cook@oag.texas.gov | 7/31/2025 4:21:53 PM | SENT |

Associated Case Party: 8317 Cross Park, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kemp Kasling | | kkasling@kaslinglaw.com | 7/31/2025 4:21:53 PM | SENT |